# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MICHAEL PATTON, et al.**                                                                      **PLAINTIFFS**

**v.**                                                              **CIVIL ACTION NO. 2:16-CV-186-KS-MTP**

**WAYNE COUNTY, MISSISSIPPI**                                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Leave to File a Sur-response ("Motion for Leave") [144] filed by Plaintiffs, and the Motion for Summary Judgment [135] filed by Defendant Wayne County, Mississippi. After considering the submissions of the parties, the record, and the applicable law, the Court finds that the Motion for Leave [144] is well taken and should be granted. The Court further finds that the Motion for Summary Judgment [135] should be granted in part and denied in part.

## I. BACKGROUND

Sheriff Jody Ashley ("Sheriff Ashley") was elected Sheriff of Wayne County, Mississippi, in 2015, and took office in January 2016. Plaintiffs Michael Patton ("Patton"), Patrick Johnson ("Johnson"), Chartaviaunca Odom ("Odom"), Dawatha Pickens ("Pickens"), Mamie Turner ("Turner"), Reginald Evans ("Evans"), and DeAnthony Jones ("Jones") (collectively "Plaintiffs") were employed by the Sheriff Department under the previous administration headed by Sheriff Darryl Woodson ("Sheriff Woodson"). Plaintiffs are all African American. Prior to Sheriff Ashley taking office, Plaintiffs were informed that they would not have a job under the Ashley administration.

On November 3, 2016, Plaintiffs filed suit in this Court against Sheriff Ashley[1] and Wayne County, Mississippi (the "County"), bringing claims of racial discrimination under 42 U.S.C. § 1981 and Title VII, as well as claims under 42 U.S.C. § 1983 for violation of the Equal Protection Clause.

## II.  MOTION FOR LEAVE [144]

Plaintiffs assert that the County included new evidence and arguments in their Reply [143] and request leave to file the Sur-response [144-1] attached to the motion. The County argues that because the entire depositions cited were attached to its original motion, not just the excerpts cited by their arguments, then there is no new evidence presented.

The Fifth Circuit has said that a district court has discretion to rely on new evidence and arguments presented for the first time in a reply brief, but must "give the non-movant an adequate opportunity to respond prior to ruling." *Vais Arms, Inc. v. Vai*, 383 F.3d 287, 292 (5th Cir. 2004) (quoting *S.W. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 545 (5th Cir. 2003)). Even if all the evidence used by Defendant in reply was submitted with its original motion, it undoubtedly used different excerpts of the depositions to support new arguments. To fairly consider these, the Court will **grant** Plaintiffs' Motion for Leave [144]. In the interest of judicial expediency, the Sur-response [144-1] will be considered as attached, and Plaintiffs need not refile it as a separate docket entry.

## III.  MOTION FOR SUMMARY JUDGMENT [135]

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] Dismissed by Stipulation [9].

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

### B. § 1981 and Title VII Claims

Discrimination claims under § 1981 and Title VII are evaluated under the same rubric of analysis. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000) (citations omitted). Absent direct evidence of racial discrimination, the Court applies the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *Id.* at 425 (citing *McDonnell Douglas*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)).

> Under that framework, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in showing a *prima facie* case, the defendant must then provide some legitimate, non-discriminatory reason for the employee's rejection. Lastly, if the employer gives a legitimate, non-discriminatory reason for the employment action, the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination.

*Id.* (internal citations omitted). In order to establish a *prima facie* case of discrimination, Plaintiffs must each show: "(1) that [they are] member[s] of a protected group; (2) that [they were] qualified for the position[s] held; (3) that [they were] discharged from the position[s]; and (4) that [they were] replaced by someone outside of the protected group." *Id.* at 426 (citing *Sing v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995)). Once Plaintiffs have established a *prima facie* case, the burden shifts to the County to show a legitimate, non-discriminatory reason for its actions. *Id.* at 425. Plaintiffs then have the burden of showing that these reasons are pretextual by offering

> sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . ; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Though the County appears to concede that Plaintiffs have made their *prima facie* case, they make numerous arguments that go directly to the elements of that case. Because of the

ambiguity created by these arguments and in the name of judicial economy,[2] the Court will first look at whether a *prima facie* case can be established for each Plaintiff before examining the reasons given for their terminations.[3]

        **1.**        **Michael Patton**

Patton himself admits that he was replaced by Alfred Hill, who, like Patton, is an African American. (*See* Patton Depo. [135-3] at 43:6-11.) As such, it is undisputed that Patton cannot establish a *prima facie* case of racial discrimination under § 1981 and Title VII. *See Byers*, 209 F.3d at 426. Even if he could, though, the County has given a non-discriminatory reason that Patton has failed to rebut.

The County argues that Patton was not rehired by Sheriff Ashley because he was "blowing up a motor" in his patrol car by not changing the oil regularly. (Mozingo Depo. [135-4] at 14:3-6; *see also* Woodson Depo. [135-2] at 28:7-8) There were also concerns about Patton's job performance, as there was testimony from Chief Mike Mozingo, the Chief Investigator under Sheriff Woodson, that Patton "just would not type reports," which were vital in proceeding with felony cases. (Mozingo Depo. [135-4] at 23:19-20.) With this sufficient evidence of legitimate, non-discriminatory reasons for the County to not rehire Patton, the burden shifts to Plaintiffs to show that these reasons are pretextual.

Though Plaintiffs dispute whether Patton's failure to maintain his patrol car is pretextual, they make no attempt to argue that Patton's performance in writing reports was not deficient. As

---

[2] If the Court were to accept this apparent concession despite the legitimate arguments made as to the elements of the *prima facie* case, the concession would only be for purposes of this motion. Plaintiffs would still need to establish these elements at trial. Because it is undisputed that some Plaintiffs cannot meet their burden on these elements at trial, the Court finds it prudent to address those issues now, rather than wait for the inevitable motion for judgment as a matter of law after Plaintiffs rest their case.

[3] There seems to be some dispute between the parties as to whether a failure to hire is a "termination" for purposes of § 1981 and Title VII. Because neither party provides any citations to authority on this issue, the Court assumes *arguendo* that there is no distinction, as it is the movant's burden to establish that summary judgment is warranted on this issue.

such, the Court must find that they have not shown that this reason for the County not retaining him is pretextual. Therefore, the Motion for Summary Judgment [135] will be **granted** as to Patton's § 1981 and Title VII claims, and they will be **dismissed with prejudice**.

### 2. Patrick Johnson

The County contends that Johnson was never discharged from his position. Johnson himself testified that, on December 21, 2015, he called Sheriff Ashley, who told him that he had a job and that he needed to "[j]ust show up for the swearing-in." (Johnson Depo. [135-5] at 25:17-25.) Two days later, Sheriff Woodson informed Johnson that he was not going to be rehired. (*See id.* at 26:4-8.) Johnson never reached out to Sheriff Ashley nor did he show up for the swearing-in. (*See id.* at 26:15-20.) Despite Johnson not hearing directly from Sheriff Ashley that he was not going to be rehired, Sheriff Woodson's testimony provides sufficient evidence to establish that the decision came from Sheriff Ashley. (*See* Woodson Depo. [135-2] at 17:25-19:15.) Because none of the County's other arguments go to Johnson's *prima facie* case, the Court finds that Johnson can survive summary judgment on his *prima facie* case and moves on to the reasons given by the County.

The County argues that there were two non-discriminatory reasons for not rehiring Johnson: (1) Sheriff Ashley's prior experience with him while working with the Department of Wildlife, and (2) the fact that he would go "10-8"[4] from his home, but not leave for patrol until some hours later.

Sheriff Ashley testified that he had worked with Johnson at the Department of Wildlife and, based on his experience working with him, he did not feel like Johnson would be a good fit within his administration. (*See* Ashley Depo. [135-1] at 30:17-21.) He went on to recall that

---

[4] A law enforcement term for clocking in with dispatch.

Johnson had told him that the job at the Department of Wildlife was "too hard" before quitting.[5] (*Id*. at 30:24-31:2.) To rebut this reason, Plaintiffs offer Johnson's Performance Evaluation [141-9] from the Department of Wildlife.[6] However, though this evaluation goes towards Johnson's overall performance, it does not go to Sheriff Ashley's opinion as to his performance or work ethic. Therefore, this reason given by the County has not been sufficiently shown to be pretextual.

Furthermore, the County argues that Johnson often went 10-8 at home but did not leave for patrol until hours later. (*See* Mozingo [135-8] at 17:2-11.) Mozingo further testified that Johnson would often take dispatch calls at home and "try to handle it from the house." (*Id.*) In response, Plaintiffs focus solely on the issue of going 10-8 at home, but ignore the allegations that Johnson would not leave home until hours after clocking in. While Plaintiffs argue that the County "cannot terminate an African American employee, and then look away when a white employee does the same alleged thing," there is no evidence[7] that any white employee ever went 10-8 at home and stayed home for hours after. (Response [141] at p. 16.) Plaintiffs have therefore also failed to show that this reason is pretextual.

Because the County has given non-discriminatory reasons for its actions and because Plaintiffs have failed to show these reasons are pretextual, the Court will **grant** the Motion for Summary Judgment [135] with respect to Johnson's § 1981 and Title VII claims, and they will be **dismissed with prejudice**.

---

[5] Plaintiffs call this hearsay, but statements made by an opposing party are not defined as hearsay under F.R.E. 801(d)(2).

[6] The County argues that this is an "unsworn document" and therefore not competent summary judgment evidence. The County misunderstands the precedent it cites. Unsworn *testimonial* evidence is not competent summary judgment evidence. Federal Rule of Civil Procedure allows documents to be used at summary judgment as long as they are admissible at trial. This particular document is admissible under F.R.E. 803(6), provided Plaintiffs meet the requirements to introduce it.

[7] There is speculative testimony by Sheriff Ashley, saying that other deputies may have gone 10-8 from home and that it may have been a common practice, but there is no evidence that any of these hypothetical deputies ever answered calls from home instead of "rolling and patrolling" as they were supposed to be doing. (Second Ashley Depo. [141-]9 at 25:2-16.)

### 3. Chartavianca Odom

The uncontroverted evidence shows that Odom was replaced by Ravean Matthews Mitchell, who is also African American. (*See* Response to Odom Interrogatory [135-12] at No. 11.) Therefore, she cannot establish a *prima facie* case of racial discrimination under § 1981 and Title VII.[8] *See Byers*, 209 F.3d at 426. Summary judgment shall be **granted** as to these claims, and they will be **dismissed with prejudice**.

### 4. Dawatha Pickens

The County makes no argument as to Pickens' *prima facie* case, but argues that the legitimate, non-discriminatory reason for Pickens' termination was the advice of Cynthia Terrell, the jail administrator, to Sheriff Ashley. Sheriff Ashley testified that Terrell told him before he took office that Pickens would undermine her authority at the jail if she were rehired. (*See* Ashley Depo. [135-1] at 43:10-23.) Plaintiffs, however, point out that Terrell testified that she never spoke to Ashley until after he took office and that she never spoke to anyone about whether any of the Plaintiffs should be rehired. (*See* Terrell Depo. [141-5] at 18:12-21, 22:9-23:1.) This evidence is sufficient to establish that the County's offered reason may be untrue and therefore pretextual. *See Keelan*, 407 F.3d at 341 (quoting *Rachid*, 376 F.3d at 312). Therefore, Plaintiffs have established that there is a factual dispute as to whether they can meet their burden on Pickens' § 1981 and Title VII claims, and the Motion for Summary Judgment [135] will be **denied** as to these claims.

### 5. Mamie Turner

The County makes no argument as to Turner's *prima facie* case. Instead, the County argues that Turner's job offer was revoked when she left work without explanation on Sheriff Ashley's

---

[8] Plaintiffs argue that, despite this argument made by the County in its Memorandum in Support [136], it has conceded this argument because it conceded that a *prima facie* case had been made. While the County undoubtedly has misplaced this argument within the *McDonnell* framework, it is a valid argument that the Court cannot ignore as it unequivocally shows that Odom cannot succeed on these claims at trial.

first day in office. While initially not rehired, Sheriff Ashley offered Turner her job when she showed up at his office his first day there. (*See* Mozingo Depo. [135-4] at 7:13-8:11.) She agreed to stay on that day and "pray about" the job offer. (*See id.*; *see also* Ashley Depo. [135-1] at 40:16-23.) Sheriff Ashley changed his mind when he discovered that Turner "up and left and left [them] in a bind" on what was a busy first day. (Ashley Depo. [135-1] at 40:16-23.)[9]

Plaintiffs, in a footnote, glibly address Turner leaving that day by stating, "Apparently, the Defendants [sic] had an issue with Ms. Turner taking a lunch break." (Response [141] at p. 21, n.13.) Nowhere in the record does Turner or anyone claim that she was "taking a lunch break." Plaintiffs further argue that this job offer does not relieve the County from liability for initially terminating Turner. The County does not counter this argument in rebuttal, and the Court is unable to say whether or not this is an issue without further legal authority presented to it.[10] Because ultimately it is the County's burden to show that this relieves it of liability and it has not done so, the Court will **deny** the Motion for Summary Judgment [135] as to Turner's § 1981 and Title VII claims.

### 6. Reginald Evans

The County makes no argument as to Evans' *prima facie* case, but argues that he was not rehired because of an incident at the jail occurring on December 24, 2015. Plaintiffs, however, have adduced evidence sufficient to show that the decision not to rehire Evans was made by Sheriff Ashley prior to this incident. A fair reading of the evidence can support this contention. Sheriff Woodson's testimony supports the allegation that Sheriff Ashley made a list of employees which

---

[9] Sheriff Ashley and Mozingo's testimonies are the only evidence before the Court as to the events surrounding that first day that relate to Turner's employment. Though excerpts of Turner's deposition have been submitted by both parties, none of these excerpts speak to these events.
[10] The Plaintiffs themselves only cite to a Supreme Court case and give no pincite to direct the Court as to what exactly they are relying on.

9

he would not be rehiring, and Johnson's testimony supports that this list was made prior to December 23, 2015. (*See* Woodson Depo. [135-2] at 17:25-19:15; Johnson Depo. [135-5] at 26:4-8.) With this evidence, the Plaintiffs have satisfied their burden to adduce evidence that the incident on December 24 may be a pretext, and summary judgment will be **denied** on Evans' § 1981 and Title VII claims.

### 7. Charles Everett

The County makes no argument that goes to Everett's *prima facie* case. The County states that Everett was not rehired for two reasons: (1) he was only part-time certified but was making more than his full-time cohorts, causing budgetary issues, and (2) Sheriff Ashley "wasn't impressed" with what he observed of his performance. (Ashley Depo. [135-1] at 35:20-22.) Sheriff Ashley testified that he was familiar with Everett's work ethic from his own work as a game warden, and that, for example, he would often park his patrol car at "curb markets"[11] for hours while on duty. (*See id.* at 36:6-10.) There was also an issue of Everett taking too much overtime, because he was only part-time certified, which was apparently a concern that Sheriff Woodson had as well. (*See* Mozingo Depo. [135-4] at 15:4-13.)

In their Response [141], Plaintiffs argue that Sheriff Ashley's comment as to Everett's work ethic should be left to the jury to decide their credibility, ignoring that, under the *McDonnell* burden-shifting analysis, it is their burden to show by sufficient evidence that this reason is untrue or, if true, that race was still a motivating factor. *See Keelan*, 407 F.3d at 341 (quoting *Rachid*, 376 F.3d at 312). Because Plaintiffs have failed to adduce any evidence that Everett's work ethic was not deficient or that Sheriff Ashley had no reason to believe that it was and because they have not shown that race played any role in Sheriff Ashley's opinion of Everett, Plaintiffs have not met

---

[11] Convenient stores.

their burden in rebutting this reason. As such, the Court need not examine the other reason given by the County, and will **grant** the Motion for Summary Judgment [135] with respect to Everett's § 1981 and Title VII claims. These claims will be **dismissed with prejudice**.

### 8. DeAnthony Jones

The County makes no argument as to Jones' *prima facie* case. It offers two legitimate, non-discriminatory reasons for Jones not being rehired: (1) he did not reapply, and (2) though he claimed to be full time, he would work full time at Wal-Mart and then only work during his lunch break at the Sheriff's Department. Jones admitted during his deposition that he did not submit a new application to be rehired nor did he ever speak with Sheriff Ashley about retaining his job. (*See* Jones Depo. 28:17-23.) Pickens stated during her deposition that Sheriff Ashley told her that everyone had to submit new applications. (*See* Pickens Depo. [135-13] at 27:24.) Sheriff Ashley testified that Terrell told him that she never saw Johnson in the jail and that he would only work one hour a day during his lunch break from Wal-Mart. (*See* Ashley Depo. [135-1] at 31:18-32:17.)

Plaintiffs rebut these reasons by arguing that, even if true, Sheriff Ashley had already decided not to rehire Jones before he found out about Jones' job at Wal-Mart and before he had a chance to submit a new application. There is a fair reading of the evidence that supports that Sheriff Ashley had already decided not to rehire Jones. Sheriff Ashley testified that he got his information about Jones' Wal-Mart job from Terrell, but Terrell testified that she never spoke with him until January 2016 and never discussed any of the Plaintiffs with anyone. (*See* Terrell Depo. [141-5] at 18:12-21, 22:9-23:1.) Sheriff Woodson's testimony supports the fact that Sheriff Ashley made a list of employees which he would not be rehiring. (*See* Woodson Depo. [135-2] at 17:25-19:15.) Finally, Johnson's testimony supports that this list was made prior to December 23, 2015. (*See* Johnson Depo. [135-5] at 26:4-8.) This is sufficient evidence that the reasons given by the

County may be pretextual, and the Motion for Summary Judgment [135] will be **denied** as to Jones' § 1981 and Title VII claims.

### C. § 1983 Claims

Under *Monell v. Department of Social Services*, the County is not liable under § 1983 "solely because its employee committed a constitutional tort." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U. S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)). Rather, "to hold a municipality liable under § 1983, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal quotations omitted). The County only argues that the first element of this claim cannot be met.

The County does not dispute that sheriffs are final policymakers in Mississippi or that the Sheriff of Wayne County had full authority in employment decisions in his department. It argues, however, that it cannot be held liable for Sheriff Ashley's actions because Plaintiffs' employment ended prior to his term in office. This argument is specious at best. Even if Sheriff Ashley was not technically an official policymaker when Plaintiffs were informed that their employment would end with Sheriff Woodson's term, he ratified his own decisions when he became a final policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L.Ed.2d. 107 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.") The County's Motion for Summary Judgment [135] will therefore be **denied** as to Plaintiffs' § 1983 claims.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Leave [144] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment [135] is **granted in part** and **denied in part**.  It is **granted** as to the § 1981 and Title VII claims of Patton, Johnson, Odom, and Everett.  It is **denied** as to the § 1981 and Title VII claims of Pickens, Turner, Evans, and Jones.  It is further **denied** as to Plaintiffs' § 1983 claims.

SO ORDERED AND ADJUDGED, on this, the ___10th___ day of January, 2018.

                                                  s/Keith Starrett
                                                  KEITH STARRETT
                                                  UNITED STATES DISTRICT JUDGE